UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORRAINE GREGERSEN, | No. 2:13-cv-0678 DAD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is denied, defendant's cross-motion is granted, and the decision of the Commissioner of Social Security ("Commissioner") is affirmed.

PROCEDURAL BACKGROUND

On October 8, 2010, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on July 3, 1988. (Transcript ("Tr.") at 10, 58.) Plaintiff's application was denied initially, (id. at 52-55), and upon reconsideration. (Id. at 51.) Plaintiff requested a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on May 9, 2012. (Id. at 384-410.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 384-85.) In a

decision issued on June 5, 2012, the ALJ found that plaintiff was not disabled. (Id. at 22.) The ALJ entered the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 1994. She is required to establish that she was disabled on that date or prior to that date.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 3, 1998 through her date last insured of December 31, 1994 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: Irritable bowel syndrome and depression (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Due to her impairments, she was not able to perform work that involved detailed or complex instructions. She could understand, remember, and carry out simple repetitive tasks.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on April 12, 1947 and was 47 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Through the dated (sic) last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 3, 1988, the alleged onset

>   date, through December 31, 1994, the date last insured (20 CFR 404.1520(g)).
>
>   12. There was discussion of the claimant's capacity for other work among her treating psychiatrist's letters. Dr. Tatomer cited the effect on her mental condition if she were to just take any type of work, and what job she could do that was commensurate with her training (Exhibit 4F). The doctor noted that she could not go back to her past work because there had been such a change in the industry. In addition, her self-esteem would suffer if she were simply to work busing tables in a cafeteria, as honorable as that work is (Exhibit 30F).[1]

(Id. at 12-21.)

On February 12, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Id. at 2-4.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 7, 2013.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

/////

---

[1] The ALJ noted that the Social Security Administration will determine that a claimant is not disabled if her residual functional capacity and vocational abilities allow her to do work, but she remains unemployed because of technological changes in the industry in which she worked or because she no longer wished to do a particular type of work. (Tr. at 21-22.)

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In her pending motion plaintiff argues that the ALJ committed the following four principal errors in finding her not disabled: (1) the ALJ erred at step three of the sequential evaluation; (2) the ALJ's treatment of the medical opinion evidence constituted error; (3) the ALJ improperly rejected plaintiff's testimony concerning her subjective symptoms; and (4) the ALJ failed to explain the ALJ's Residual Functional Capacity assessment.[2] (Pl.'s MSJ (Dkt. No. 12) at 8-14.[3])

/////

---

[2] The court has reordered plaintiff's arguments for purposes of clarity and efficiency.

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

**I.      Step Three**

Plaintiff argues that the ALJ's analysis at step three of the sequential evaluation was inadequate.  At step three of the sequential evaluation process, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1.  The Listing of Impairments sets forth, for adults, impairments that have been deemed severe enough to prevent an individual from engaging in any gainful activity, regardless of age, education, or work experience.  20 C.F.R. § 416.925(a).

The claimant bears the burden of establishing a prima facie case of disability under the Listing of Impairments.  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (citing Tackett, 180 F.3d at 1098-99).  "For a claimant to qualify for benefits by showing that his impairment matches a listing, it must meet all of the specified medical criteria."  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  For a claimant to qualify for benefits by showing that his or her impairment, or a combination of impairments, is "equivalent" to a listed impairment, the claimant must present medical findings equal in severity to all the criteria for the single most similar listed impairment.  Id. at 531.

Here, the ALJ found that plaintiff's irritable bowel syndrome did not satisfy listing 5.06 (entitled inflammatory bowel disease) because plaintiff "did not require hospitalization for intestinal decompression on at least two occasions at least 60 days apart within a consecutive 6-month period."  (Tr. at 13.)  See 20 CFR Pt. 404, Subpt. P, App. 1, Listing 5.06 ("(IBD) documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with . . . hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6-month period").

The ALJ also found that plaintiff's mental impairment did not meet or medically equal the criteria for listing 12.04 (Affective (mood) Disorder).  (Tr. at 13.)  In order to meet or equal an affective disorder under Listing 12.04, a plaintiff's impairment must satisfy (1) both the paragraph A and paragraph B requirements, or (2) the paragraph C requirements detailed in 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04.

5

To meet the paragraph B requirements a plaintiff must prove that her mental impairments caused at least two of the following: marked deficiencies in either activities of daily living, maintaining social functioning, or concentration, persistence or pace, or repeated episodes of deterioration or decompensation. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04. A "marked" rating indicates a higher degree of limitation than a "mild" or "moderate" rating. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1200(c).

To meet the paragraph C criteria, a plaintiff must have a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychological support, and one of the following: (1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.

Here, the ALJ found that plaintiff had no restriction with respect to her activities of daily living because there was no evidence that plaintiff had any problems with respect to activities of daily living prior to her date last insured. (Tr. at 13.) The ALJ also found that plaintiff had no difficulties with respect to her social functioning, since plaintiff met and married her husband after she stopped working. (Id.) The ALJ found that plaintiff had moderate difficulties with respect to her concentration, persistence or pace in light of evidence that she had stopped working due to the stress of her job. (Id. at 14.) Finally, the ALJ noted that plaintiff had experienced no episodes of decompensation. (Id.) Accordingly, the ALJ found that plaintiff's mental impairment did not satisfy the paragraph B criteria. (Id.)

With respect to the paragraph C criteria, the ALJ noted that plaintiff had not experienced repeated episodes of decompensation, was not in jeopardy of decompensating, and did not have a history of one or more years' inability to function outside of a highly supported living

1 arrangement. (Id.) Accordingly the ALJ found that plaintiff's impairment did not satisfy the
2 paragraph C criteria. (Id.)

3 Although plaintiff clearly disagrees with the ALJ's findings in this regard, arguing that the
4 reasons offered by the ALJ "don't prove much of anything in particular at all," (Reply (Dkt. No.
5 16) at 7), plaintiff fails to cite to a single piece of evidence that would dispute the findings made
6 by the ALJ. Instead, plaintiff asserts merely a vague and conclusory criticism of the ALJ's step
7 three evaluation. Accordingly, the court finds that plaintiff is not entitled to relief with respect to
8 this claim.

## II.     Medical Opinion Evidence

10 Plaintiff argues that the ALJ's decision "does not even really weigh the medical
11 evidence." (Pl.'s MSJ (Dkt. No. 12) at 10.) In this regard, plaintiff asserts that "it cannot really
12 be determined what weight was given to *any* medical opinions," specifically with respect to the
13 opinions of Dr. Michael Mainardi and Dr. William Tatomer. (Id.) (emphasis in original).

14 The ALJ must consider all the medical evidence in the record and "explain in [his or her]
15 decision the weight given to . . . [the] opinions from treating sources, nontreating sources, and
16 other nonexamining sources." 20 C.F.R. §§ 404.1527(e)(2)(ii), 1416.927(e)(2)(ii). The weight to
17 be given to medical opinions in Social Security disability cases depends in part on whether the
18 opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81
19 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight
20 should be given to the opinion of a treating source than to the opinion of doctors who do not treat
21 the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to
22 cure and has a greater opportunity to know and observe the patient as an individual. Smolen, 80
23 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990). A treating physician's
24 uncontradicted opinion may be rejected only for clear and convincing reasons, while a treating
25 physician's opinion that is controverted by another doctor may be rejected only for specific and
26 legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31.

27 Here, with respect to the March 3, 1990 opinion of Dr. Michael Mainardi, the ALJ noted
28 that Dr. Mainardi's opinion stated that plaintiff "was kept from working by her anxiety and

1 depression and not because of her irritable bowel" syndrome.  (Tr. at 16.)  Dr. Mainardi's
2 opinion, however, also noted "that he was not seeing" plaintiff as frequently as the doctor who
3 was treating her anxiety and depression and that he "could offer very little as to whether
4 [plaintiff] should receive Social Security Benefits (Exhibit 227F)."  (Id.)

5      In this regard, Dr. Mainardi's opinion stated that plaintiff's anxiety and depression, which
6 were "her major diagnosis" and "the main reason" she had not returned to work, were being
7 treated by another doctor.  (Id. at 150.)  Dr. Mainardi's opinion "stress[ed]" that it was plaintiff's
8 "anxiety and depression" that kept her from working, "not the irritable bowel" syndrome.  (Id.)
9 Moreover, Dr. Mainardi stated that he "was not really involved" in plaintiff's care "on a regular
10 basis . . . ."  (Id.)

11      Accordingly, the ALJ afforded "substantial evidentiary weight" to Dr. Mainardi's opinion
12 that plaintiff was "not kept from working by her irritable bowel syndrome," but rejected his
13 opinion with respect to plaintiff's mental condition and the impact thereof because while Dr.
14 Mainardi "had treated and observed plaintiff for a period of time and was knowledgeable about
15 her physical functioning," with respect to her mental functioning, Dr. Mainardi was "not a mental
16 health care provider."  (Tr. at 17.)

17      With respect to the opinions offered by Dr. William Tatomer, the ALJ considered them
18 and elected to not afford those opinions "controlling evidentiary weight . . . ."  (Tr. at 18.)  In
19 support of this determination, the ALJ noted that Dr. Tatomer failed to keep office notes and had
20 "provided a varying degree of opinions about the [plaintiff's] capacity for work."  (Id. at 17)  The
21 ALJ also noted that Dr. Tatomer "repeatedly wrote" that plaintiff "had a low tolerance for
22 medications due to side effects," despite the fact that plaintiff and Dr. Mainardi reported that
23 plaintiff had been taking multiple medications.  (Id. at 19.)

24      Under these circumstances, it cannot be said that the ALJ failed to weigh the medical
25 opinion evidence.  Moreover, the court finds no error with respect to the ALJ's weighing of the
26 medical opinion evidence of record.  See Turner v. Commissioner of Social Sec., 613 F.3d 1217,
27 1223 (9th Cir. 2010) (ALJ may reject medical opinion that is "based almost entirely on the
28 claimant's self-reporting"); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (a treating

physician's opinion is properly rejected where the treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that the ALJ properly rejected the opinion of a treating physician since it was not supported by treatment notes or objective medical findings); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Khounesavatdy v. Astrue, 549 F.Supp.2d 1218, 1229 (E.D. Cal. 2008) ("[I]t is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion.") (citing Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995)).

Accordingly, the court finds that plaintiff is not entitled to relief with respect to this claim.

### III. Plaintiff's Testimony

Plaintiff asserts that the ALJ erred in discrediting plaintiff's testimony, arguing that the ALJ's "sole reason given for condemning [plaintiff's] credibility doesn't work." (Pl.'s MSJ (Dkt. No. 12) at 12.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain,

/////

1 or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d
2 1104, 1112 (9th Cir. 2012).

3     "The ALJ must specifically identify what testimony is credible and what testimony
4 undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685,
5 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.
6 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the
7 "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or
8 between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and
9 testimony from physicians and third parties concerning the nature, severity, and effect of the
10 symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.
11 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.
12 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the
13 court "may not engage in second-guessing." Id.

14     Here, the ALJ did "not find [plaintiff] to be a wholly credible historian." (Tr. at 16.)  In
15 this regard, the ALJ noted that plaintiff was alleging that her disability began "over 20 years in
16 the past," in 1988. (Id.)  Although plaintiff filed for benefits in 1989, she withdrew that claim
17 prior to an administrative hearing before an ALJ. (Id.)  Plaintiff did not seek benefits again until
18 2010. (Id.)  The ALJ noted that plaintiff now receives Social Security Retirement Benefits and
19 that if plaintiff were found to be disabled, that "would increase the amount of her Social Security
20 Retirement Benefits." (Id.)

21     Although plaintiff disagrees with the ALJ's speculation as to plaintiff's motive underlying
22 the twenty-year gap between her seeking of benefits, nonetheless, an ALJ may consider "ordinary
23 techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent
24 statements concerning the symptoms, and other testimony by the claimant that appears less than
25 candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  That is what the ALJ did here.

26     Accordingly, the court finds that plaintiff is noted entitled to relief with respect to this
27 claim.
28 /////

## IV. Residual Functional Capacity

Plaintiff argues that the ALJ's opinion fails to explain the ALJ's own Residual Functional Capacity ("RFC") determination. (Pl.'s MSJ (Dkt. No. 12) at 8.)

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(1). See also Cooper v. Sullivan, 880 F.2d 1152, n.5 (9th Cir. 1989) ("A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations."). In conducting an RFC assessment, the ALJ must consider the combined effects of an applicant's medically determinable impairments on the applicant's ability to perform sustainable work. 42 U.S.C. § 423(d)(2)(B); Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996). The ALJ must consider all of the relevant medical opinions as well as the combined effects of all of the plaintiff's impairments, even those that are not "severe." 20 C.F.R. §§ 404.1545(a); 416.945(a); Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003). "[A]n RFC that fails to take into account a claimant's limitations is defective." Valentine, 574 F.3d at 690. The ALJ must determine a claimant's limitations on the basis of "all relevant evidence in the record." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ's opinion recounted and considered all the relevant evidence in this action before concluding that the RFC assessment was "supported by the State agency determinations, the available objective medical evidence of record, and the claimant's presentation at [the] hearing." (Tr. at 19.) Although plaintiff argues that ALJ's opinion fails to explain how or why this cited evidence supports the ALJ's RFC assessment, (Pl.'s Reply (Dkt. No. 16) at 2), plaintiff has failed to point to any evidence, let alone evidence that was not properly rejected by the ALJ, which is in any way inconsistent with the ALJ's RFC assessment.

Accordingly, the court finds that plaintiff is not entitled to relief with respect to this claim.

## CONCLUSION

For these reasons, the court finds that plaintiff is not entitled to summary judgment in her favor with respect to any of her arguments.

Accordingly, IT IS HEREBY ORDERED that:

/////

1. Plaintiff's motion for summary judgment (Dkt. No. 12) is denied;
2. Defendant's cross-motion for summary judgment (Dkt. No. 13) is granted; and
3. The decision of the Commissioner of Social Security is affirmed.

Dated: July 18, 2014

*/s/ Dale A. Drozd*

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.soc sec\gregersen0678.ord.docx